```
 1  LANER MUCHIN DOMBROW BECKER
       LEVIN AND TOMINBERG LTD.
 2  ROBERT H. BROWN
    515 North State Street – Suite 2800
 3  Chicago, IL  60610
    Telephone:  (312) 467-9800
 4  Facsimile:   (312) 467-9479
    rbrown@lanermuchin.com
 5
    SEDGWICK, DETERT, MORAN & ARNOLD LLP
 6  JAMES S. BROWN (Bar No. 135810)
    JENNIFER S. DONNELLAN (Bar No. 210795)
 7  One Market Plaza
    Steuart Tower, 8th Floor
 8  San Francisco, CA  94105
    Telephone: (415) 781-7900
 9  Facsimile: (415) 781-2635
    james.brown@sdma.com
10  jennifer.donnellan@sdma.com

11  Attorneys for Defendant
    KERRY INC.
12

13  LAW OFFICES OF RANDALL M. WIDMANN
    RANDALL M. WIDMANN (Bar No. 73154)
14  2479 E. Bayshore Rd., Suite 703
    Palo Alto, CA 94303
15  Telephone: (650) 424-8400
    Facsimile: (650) 617-6888
16  randall@rmwlaw.net

17  Attorneys for Plaintiff
    REYNALDO GOLEZ
18
```

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| REYNALDO GOLEZ,<br><br>    Plaintiff,<br><br>    vs.<br><br>KERRY, INC., a corporation, DOE ONE through ONE HUNDRED, inclusive,<br><br>    Defendant. | CASE NO. C-07-05984 SI<br><br>**JOINT CASE MANAGEMENT CONFERENCE STATEMENT** |

In accordance with the Standing Order for All Judges in the Northern District of California, the parties hereby file their Joint Case Management Conference Statement.

-1-                                                             C-07-05984 SI

JOINT CMC STATEMENT

Document ID: 472052.1

1. <u>Jurisdiction and Service:</u>

This Court has diversity jurisdiction under 28 U.S.C. §1332 in that the suit is between citizens of different states, and Plaintiff's claim is in excess of $75,000. There are no issues regarding jurisdiction or venue. The sole named Defendant has been served.

2. <u>Facts:</u>

    a. Summary of Plaintiff's Factual Contentions:

Plaintiff started his employment with Defendant, Kerry, in July of 2000 as a maintenance mechanic. He always received good performance reviews at the company. On July 13, 2006, while Mr. Golez was at work, he experienced severe headaches, dizziness and blacked out for a few minutes. He broke out in a cold sweat. He immediately informed his lead mechanic that he was going home. He sought treatment for his symptoms and was ultimately diagnosed with a brain tumor. He underwent successful surgery thereafter.

Plaintiff was cleared to go back to work by his neurosurgeon in early January of 2007. He immediately notified Defendant and provided his release paperwork to the Kerry's human resources representative. Having heard nothing from the human resources representative after a period of time Plaintiff made several calls to her and asked her when he could return to work. She told Mr. Golez to see his speech pathologist and get his discharge papers. He received those papers and again submitted them to the Defendant.

On January 20, 2007, again having received no follow-up from the local human resources representative, Plaintiff sent a letter to Defendant, Kerry's, HR department in Wisconsin. He informed Defendant that he had been discharged by both his neurosurgeon and speech pathologist and was prepared to go back to work and that he had submitted his release papers to the local HR representative. Mr. Golez asked for assistance in hastening his return to work as he was his family's sole breadwinner.

On January 30, 2007 Plaintiff again contacted the local human resources representative and asked about the status of his job. He was then told to go see an occupational doctor. He informed Defendant's agent that he had sent a letter to the company headquarters in an effort to speed up his return to work. Plaintiff then met with the occupational doctor who gave him some

tests and then referred him to a neuropsychologist. He met with an intern in neuropsychology who gave him a battery of tests. He received a call from the occupational doctor stating that his release papers were ready. Plaintiff again submitted the discharge papers from the doctor to the local human resources representative who promised to call. This took place on March 7, 2007.

Again hearing nothing from the local HR representative Plaintiff called her on March 17, 2007. She then informed Plaintiff that he had been terminated on January 15, 2007, "pursuant to company policy."

Defendant never attempted to accommodate Mr. Golez of engage in an interactive process determine appropriate accommodations despite its affirmative duty to do so pursuant to California law. Also, Mr. Golez never received any notification of his California Family Rights Act rights when Defendant was informed of Plaintiff's illness. When Mrs. Golez brought this to the local HR representative's attention the HR representative falsely insisted that she had sent the forms. Further, Plaintiff did not receive any notice of continuing medical benefits and coverage as required by section 2807 of the California Labor Code and the Consolidated Omnibus Budget Reconciliation Act (COBRA) from Defendant resulting in termination of his benefits.

      b.    Summary of Defendant's Factual Contentions:

Plaintiff was a maintenance mechanic at Kerry's Union City, California food manufacturing facility. Maintenance mechanics are called upon to diagnose and repair manufacturing machinery throughout Kerry's facility. The maintenance mechanics must work independently. The repair jobs routinely involve working at heights, in confined areas, bending, crouching, kneeling, and lifting heavy items. Depending upon the repair job being performed, repairs of a particular machine might take from a few minutes to an entire eight hour shift, or more. Plaintiff's job performance was sufficient to maintain continued employment. In his last performance evaluation prior to going on medial leave of absence, he received a composite performance rating of 3.17 out of 5. On or about July 15, 2006, Defendant is informed that Plaintiff suffered a numbered of physical symptoms which ultimately led to brain surgery. Shortly before August 15, 2006, he applied for Family Leave. His medical provider completed a Health Care Provider Certification on August 31, 2006 specifying that Plaintiff's disabling

physical condition commenced on July 15, 2006 and had a probable duration through September 29, 2006. The Certification specified that Plaintiff could perform no work functions. Kerry granted the Family Leave Application. Plaintiff was placed on short-term disability leave, wherein he received some monetary payment for the time he did not work. Plaintiff's physical condition apparently continued to prevent him from working after September 29, 2006 since he did not return to work. Kerry continued to keep him on leave status, even after the 12 weeks allowed for Family Leave had expired.

In early January 2007, Kerry notified Plaintiff that his short-term disability benefits would run out on January 14, 2007. On January 15, 2007, Plaintiff appeared at Kerry's facility with a note from his physician stating that he could return to work without restrictions, effective January 22, 2007. However, when he appeared, his hands were shaking; his speech was impaired; and he appeared to not be properly functioning. Therefore, on January 17, 2007, Kerry's Human Resources Representative wrote a letter to Plaintiff's physician enclosing a copy of Plaintiff's job description, and asking the physician to confirm that it was appropriate to return Plaintiff to work without restrictions.

Counsel is currently investigating whether Plaintiff's physician promptly returned a new return to work with restrictions, or whether there was a delay in the physician responding. Kerry and Plaintiff did communicate several times pertaining to delays in Plaintiff's physician communicating to Kerry. Nevertheless, on March 12, 2007, Plaintiff's physician provided Kerry with a new release to return to work which contained very severe restrictions on Plaintiff's activities. These restrictions included that he was to work no more than two hours per day or eight hours per week; that he should be placed in tasks that had no risk of injury; that he should be closely supervised; that he should not stand or walk more than 25% of his work day; that he should not sit for more than 25% of his work day; that he should not lift items over 26 pounds; that he should only occasionally be allowed to lift items under 26 pounds; and that he should only occasionally bend, squat, or kneel. The restrictions stated that if his physical condition improved, his work hours could be increased by two hours per week. The doctor's note stated further that Plaintiff was in ongoing rehabilitation activities.

1	Following receipt of the note, Kerry determined that it could not reemploy Plaintiff since
2	the essential functions of performing maintenance mechanic work included working without
3	supervision; spending more than two hours per day repairing a machine; required work in
4	sometimes hazardous locations; and required physical activity far beyond Plaintiff's stated
5	limitations. Therefore, Kerry informed Plaintiff that he should go on long-term disability. Such
6	long-term disability, provided through Kerry's insurance carrier, gave Plaintiff ongoing financial
7	benefits. However, in order to receive long-term disability, under the policy, Plaintiff's
8	employment must be terminated. Since Plaintiff's short-term disability had run out as of on or
9	about January 14, 2007, in order to enable Plaintiff to receive benefits from January 14, rather
10	than from on or about March 14, Kerry terminated his employment retroactive to January 14.
11	The sole intent of making his termination retroactive was to benefit him by enabling him to
12	collect two additional months of long-term disability compensation.
13	However, Plaintiff appeared to be confused about reasons for Kerry's actions. He wrote
14	letters to Kerry's corporate office, to which Kerry, unfortunately, did not reply.
15	After further correspondence involving Plaintiff's present attorney, on June 26, 2007,
16	Kerry's attorney wrote a letter attempting to explain the reasons for its actions. Among other
17	things, in that letter Kerry made an unconditional offer to return Mr. Golez to his position as a
18	maintenance mechanic, assuming that his physical condition allowed him to perform the essential
19	functions of his job. Plaintiff's attorney rejected the offer, and represented that Plaintiff was not
20	physically able to perform the job.
21	Regarding Plaintiff's claims that he did not receive various statutorily required notices,
22	Kerry believes that such notices were sent.
23	    3.    Legal Issues:
24	        a.    Plaintiff's Contentions:
25	Plaintiff brings claims for violation of the California Fair Employment and Housing Act
26	[Unlawful Discrimination, Failure to Prevent Harassment and Discrimination, Retaliation and
27	Failure to Accommodate], violation of the California Family Rights Act, violation of the
28

California Labor Code and the Consolidated Omnibus Reconciliation Act (COBRA), Wrongful Termination in Violation of Public Policy and for Intentional Infliction of Emotional Distress.

      b.    Defendant's Contentions:

Defendant asserts that it complied with all statutes and attempted to reasonably accommodate Plaintiff. At this time, Defendant cannot identify any particular legal issues, other than those which are common in litigation under the cited statutes.

4.    Motions:

None are pending. After discovery, it is possible that Defendant will file a Motion for Summary Judgment.

5.    Amendment of Pleadings:

None known at this time.

6.    Evidence Preservation:

Defendant has placed a litigation hold on hard copy personnel files of Plaintiff and other maintenance mechanics, as well as the e-mail databases of persons involved in decisonmaking on Plaintiff's situation.

7.    Disclosures:

The parties have not yet exchanged initial disclosures. They propose that the deadline for initial disclosures be set for May 19, 2008.

8.    Discovery:

There has been no discovery taken to date. The parties contemplate the normal written discovery, depositions of fact witnesses and depositions of expert witnesses, if any. The parties propose the following discovery schedule:

Fact Discovery Cutoff -- September 30, 2008

Expert Witness Discovery Cutoff -- December 1, 2008

9.    Class Actions:

Not applicable.

10.    Related Cases:

Not applicable.

11. Relief:

Plaintiff seeks monetary damages for loss of salary and benefits both past and in the future [subject to expert testimony], monetary damages for emotional distress of not less than $350,000, statutory penalties, statutory attorney's fees, punitive damages of not less than five times compensatory damages and prejudgment interest on all compensatory damages.

12. Settlement and ADR:

It is too early to determine the chances of settlement. The parties have agreed upon neutral private mediation. They are currently discussing the identity of a mediator. The parties believe that basic deposition and document exchanges will be necessary before mediation will be productive. Therefore, the parties believe that the mediation should not occur until fact discovery is complete, or nearly complete.

13. Consent to Magistrate Judge for All Purposes:

The parties do not consent.

14. Other References:

The parties do not believe any of the listed references are appropriate.

15. Narrowing of Issues:

At this time, the parties are not aware of issues that can be narrowed.

16. Expedited Schedule:

The parties do not believe an expedited schedule is appropriate.

17. Scheduling:

    a. Designation of Experts - September 30, 2008.

    b. Discovery Cutoff - See paragraph 8 above.

    c. Hearing of Dispositive Motions- No later than January 9, 2009.

    d. Pre-Trial Conference - 30 days prior to trial date.

    e. Trial -- February 16, 2009 or later.

18. Trial:

Jury. The parties expect the length of trial to be 5 to 7 days.

///

19. <u>Disclosure of Non-Party Interest Entities or Persons</u>:

Defendant has filed a "Certification of Interested Entities or Persons" required by CLR 3-16. In addition, the following listed corporations have a financial interest in Defendant Kerry, Inc. as follows: Kerry Holding Co., a Delaware Corporation, is the US holding company of Kerry, Inc. Kerry Group plc (Republic of Ireland) is the parent company of Kerry Holding Co.

20. <u>Other Matters</u>:

None known at this time.

DATED: March 31, 2008

/s/ Robert H. Brown
One of the Attorneys for Defendant

/s/Randall M. Widmann
Attorney for Plaintiff

/s/ James S. Brown
Local Counsel for Defendant

-8-  C-07-05984 SI
JOINT CMC STATEMENT
Document ID: 472052.1