United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| REYNALDO GOLEZ, | No. C 07-05984 SI |
| Plaintiff, | **ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |
| v. | |
| KERRY, INC. and DOES 1-100, inclusive, | |
| Defendants. / | |

On December 19, 2008, the Court heard oral argument on defendant's motion for summary judgment. Having considered the arguments of the parties and the papers submitted, and for good cause shown, the motion is GRANTED IN PART and DENIED IN PART.

**BACKGROUND**

This case arises out of plaintiff Reynaldo Golez's termination from his job as a maintenance mechanic for defendant Kerry, Inc. in March, 2007. Defendant is a Wisconsin corporation that manufactures food ingredients. It operates a factory in Union City, California, that manufactures chocolate ingredients. Defendant acquired the factory from Shade Foods in 2000. Plaintiff began working at the factory about a year before defendant acquired it. Defendant defines the position of "maintenance mechanic" as follows:

> While performing the duties of this job, the employee regularly works near moving mechanical parts and is regularly exposed to risk of electrical shock. The employee occasionally works in high, precarious places and in outside weather conditions and is occasionally exposed to fumes or airborne particles and vibration. The noise level in the work environment is usually loud.

*See* Decl. of Jennifer A. Donnellan in Supp. of Def. Mot. for Summ. J. ("Donnellan Decl."), at ex. A,

DID 0109.

In approximately July, 2006, plaintiff began experiencing headaches. He was eventually diagnosed with a brain tumor and received surgery on August 29, 2006. *See* Donnellan Decl., at ex. D, Ephron Depo., DID 34. On August 31, 2006, plaintiff's treating physician, Dr. Kathy Gu, reported that plaintiff was "recovering from brain surgery and cannot perform any functions at this time." *Id.* at DID 122. In her report, she stated that plaintiff could not perform the following job-related functions: standing for 30 minutes or less, sitting for 30 minutes or less, walking short distances, and arm movement. *Id.*

Plaintiff signed two applications for family leave, on August 18 and 31, 2006. *See* Donnellan Decl., at ex. A, Golez Depo., DID 120-126. The applications include statements from plaintiff's treating physician, Dr. Kathy Gu. The application from August 18 includes the following notes from Dr. Gu: "Continued dizziness and vertigo. MRI of brain revealed a cerebellar mass and is under evaluation . . . . Cannot perform job functions at all right now; under further evaluation." *Id.* at DID 124-25. In the August 31, application, Dr. Gu states, "Brain tumor, cerebella infarct requiring surgery, and rehab. . . . Patient recovering from brain surgery and cannot perform any functions at this time." *Id.* at DID 121-22. Plaintiff received short term disability payments from defendant from July 13, 2006 until January 14, 2007. *Id.* at DID 151; Tr. 73.

On January 11, 2007, Dr. Allen Efron, plaintiff's treating surgeon, examined plaintiff. He observed:

> He denies any headaches or difficulties referable to the craniotomy wound. He denies any diplopia. The patient is presently ambulating with a cane. On physical examination, the patient's affect is bright. Speech is markedly less dysarthric. The craniotomy wound is flat and well healed. No diplopia is elicitable. The gait is much steadier with good tandem testing. I believe that Mr. Golez continues to make an excellent recovery from suboccipital craniotomy and resection of a cavernous malformation. I believe he is cured of his lesion and that his neurologic recovery will continue over the coming months. He certainly seems to be capable of returning to work as [of] January 22 with the only restriction to refrain from climbing. He should be able to climb infrequently.

*Id.* at ex. D, Efron Decl., at 34. Dr. Efron signed two releases returning plaintiff to work. One did not place any restrictions on plaintiff; the other placed restrictions of only occasional climbing; and work

hours of eight hours per day, forty hours per week. *Id.* at 9, 10.[1]

Plaintiff took a copy of the release listing no restrictions to the plant and informed his supervisors that he was ready to return to his job. His supervisors observed that plaintiff's speech was slow and slurred. He told them that he had trouble talking and could not drive. *See id.*, ex. E, Rogers Depo., at 61-62; Decl. of Pat Thomas in Supp. of Def. Mot. for Summ. J., ¶ 2. Plaintiff's supervisors determined that their own observations of plaintiff's condition were inconsistent with Dr. Efron's release and that it would not be safe for plaintiff to return to work in the plant. *See id.*, Decl. of Remi Bisson in Supp. of Def. Mot. for Summ. J. ("Bisson Decl."), ¶ 4. Plaintiff left the plant to wait for a phone call from his supervisors. *See id.*, ex. A, Golez Depo., Tr. 91.

On February 7, 2007, plaintiff was examined by Raymond Lai, D.O. Dr. Lai observed, "Mobility without assistance. Uses no device. Patient reports no falls. Patient requires no assistance for transfer activities and stairs and unleveled surfaces." Dr. Lai also noted, "Not capable of resuming work at this time due to deficits." In the recommendation section of his report, Dr. Lai stated, "Consider gradual return to work program after neuropsych testing is done. Please ask your supervisor for feedback evaluation. In general, hours are increased gradually based on your work performance." *See id.*, ex. C, Lai Depo., 36, 37.

On March 12, 2007, Dr. Lai issued a return to work letter for plaintiff, based on the February 7 examination. In that letter, Dr. Lai characterized plaintiff's condition as follows: "Due to his medical condition, [plaintiff] should start with modified duty with no risk of injury and with close supervision. He should start initially with limited hours and 2 hours per day for 5 days a week and with close supervision. Patient may progress with 2 additional hours per week with supervisor's discretion for safe work habits." *See id.*, 23.

Plaintiff took Dr. Lai's March 12 release to the plant. Margie Rogers, who at that time was the maintenance utility and human resources benefits clerk at the plant, sent the document to Julie Horras, human resources manager for defendant. *See id.*, at ex. E (Rogers Depo.), Tr. 76. Horras told Rogers that plaintiff should be notified that his employment was terminated because there was no

---

[1] It is unclear why Dr. Efron completed two forms.

3

documentation showing that he could perform his job safely. *See id.* Remi Bisson, the maintenance manager at the plant, also reviewed the letter and concluded that it would be unsafe for both plaintiff and his co-workers if plaintiff returned to work in the plant. *See* Bisson Decl. ¶ 5. Bisson based this conclusion on his opinion that the March 12 release required plaintiff to be placed in a position with "no risk of injury," but that no such position existed at the plant. *See id.* ¶¶ 6, 7. In addition, Bisson noted that the letter placed restrictions on activities such as lifting, bending, squatting, kneeling, climbing, and reaching above his shoulder, and that it would not be possible for him to do his job as a mechanic without these activities. *See id.* ¶ 9.

Rogers called plaintiff shortly after March 12 to tell him that he was terminated, and that his termination would be backdated to January 14 to allow him to collect long-term disability beginning on that date. *See* Rogers Depo. ¶ 12. Plaintiff's application for long term disability benefits was approved on May 23, 2007. Donnellan Decl., at ex. B, RG 0243.

Plaintiff filed a complaint in Alameda County Superior Court alleging violations of California's Fair Employment and Housing Act ("the FEHA"), Cal. Gov. Code §§ 12900 *et seq.* (for unlawful discrimination, failure to prevent harassment and discrimination, unlawful retaliation, and failure to accommodate); the California Family Rights Act ("CFRA"); the Consolidated Omnibus Budget Reconciliation Act of 1986 ("COBRA"); and California Labor Code § 2807. Plaintiff also alleged common law claims for wrongful termination and intentional infliction of emotional distress. Defendant removed to this Court on November 27, 2007. Now before the Court is defendant's motion for summary adjudication of each of plaintiff's eight causes of action.

**LEGAL STANDARD**

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party, however, has no burden to negate or disprove matters on which the non-moving party will have the burden of proof

1 at trial. The moving party need only demonstrate to the Court that there is an absence of evidence to
2 support the non-moving party's case. *See id.* at 325.

3 The burden then shifts to the non-moving party to "designate 'specific facts showing that there
4 is a genuine issue for trial.'" *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)). To carry this burden, the
5 non-moving party must "do more than simply show that there is some metaphysical doubt as to the
6 material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).
7 "The mere existence of a scintilla of evidence . . . will be insufficient; there must be evidence on which
8 the jury could reasonably find for the [non-moving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S.
9 242, 252 (1986).

10 In deciding a summary judgment motion, the evidence is viewed in the light most favorable to
11 the non-moving party, and all justifiable inferences are to be drawn in its favor. *Id.* at 255. "Credibility
12 determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts
13 are jury functions, not those of a judge [when she] is ruling on a motion for summary judgment." *Id.*
14 The evidence presented by the parties must be admissible. Fed. R. Civ. P. 56(e). Conclusory,
15 speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and
16 defeat summary judgment. *Thornhill Publ'g Co., Inc. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979).

## DISCUSSION

### 1. Unlawful Discrimination

20 Plaintiff alleges that his termination constituted unlawful discrimination on the basis of his
21 medical condition and his physical and mental disabilities. Section 12940 of the FEHA provides, in
22 relevant part, "[i]t shall be an unlawful employment practice, unless based upon a bona fide
23 occupational qualification, . . . (a) For an employer, because of the . . . physical disability, mental
24 disability, [or] medical condition, of any person, to . . . discharge the person from employment." Cal.
25 Gov. Code § 12940(a). Defendant argues that plaintiff's claim fails because he cannot establish that he
26 was able to perform the essential functions of his job with or without accommodation.

27 "The FEHA prohibits discrimination against any person with a disability but . . . provides that
28 the law allows the employer to discharge an employee with a physical disability when that employee

5

is unable to perform the essential duties of the job even with reasonable accommodation." *Green v. State*, 42 Cal. 4th 254, 257 (Cal. 2007). Under the FEHA, it is the plaintiff's initial burden to demonstrate that "he or she is a qualified individual under the FEHA (i.e., that he or she can perform the essential functions of the job with or without reasonable accommodation)." *Id.* at 260. The Court finds that, in light of the medical report of Dr. Efron on January 11, 2007 and the medical reports of Dr. Lai on February 7 and March 12, 2007, there are triable issues of fact as to whether plaintiff could have performed the essential duties of his job with reasonable accommodation at the time he was terminated.

### 2.     **Failure to Prevent Harassment and Discrimination**

Plaintiff alleges that defendant violated the FEHA by failing to take reasonable steps to prevent harassment and discrimination of plaintiff. Section 12940(j) provides that an employer "shall take all reasonable steps to prevent harassment from occurring." Defendant argues that summary judgment on this cause of action is warranted because plaintiff cannot prove discrimination. *See Trujillo v. North County Transit Dist.*, 63 Cal. App. 4th 280, 289 (Cal. Ct. App. 1998) (holding that an "essential foundational predicate" is a finding that harassment or discrimination has occurred). As discussed above, the Court finds that there are triable issues as to whether discrimination occurred.

### 3.     **Unlawful Retaliation**

Plaintiff alleges that defendant violated section 12940(h) of the FEHA, which provides that it is unlawful to "to discharge, expel, or otherwise discriminate against any person because the person has opposed any practices forbidden under this part or because the person has filed a complaint, testified, or assisted in any proceeding under this part." *See* Cal. Gov. Code § 12940(h). Defendant argues that it is entitled to summary judgment on this claim because plaintiff cannot establish that he engaged in a protected activity.

"(1) To establish a prima facie case of retaliation, the plaintiff must show (1) he or she engaged in a protected activity; (2) the employer subjected the employee to an adverse employment action; and (3) a causal link between the protected activity and the employer's action." *Akers v. County of San Diego*, 95 Cal. App. 4th 1441, 1453 (Cal. Ct. App. 2002). The FEHA prohibits employers from

6

discriminating against an employee because that employee has opposed any practice that the employee reasonably believes is unlawful under those provisions. *See Yanowitz v. L'Oreal USA, Inc.*, 36 Cal. 4th 1028, 1046 (Cal. 2005). That is, plaintiff must establish that he complained of conduct he reasonably believed to be prohibited under the FEHA.

Plaintiff cites no evidence establishing that he complained to defendant that his termination was prohibited as unlawful discrimination. The Court recognizes that plaintiff argues he has been prejudiced by the Court's denial of a continuance to allow him to depose defendant. The evidence plaintiff seeks, however, relates to allegations that defendant failed to engage in an interactive process with plaintiff, cited safety concerns that were pretextual, had other jobs available, did not give notice to plaintiff of his rights under CFRA, failed to contact plaintiff's treating physician, and had a policy of not accommodating production workers. None of this purported evidence relates to plaintiff's motivation for asking for his job back. Accordingly, the Court GRANTS defendant's motion for summary judgment on this issue.

### 4.     **Wrongful Termination**

Defendant argues that plaintiff's wrongful termination claim must fail because plaintiff cannot establish that defendant violated the FEHA. As discussed above, the Court finds that there are triable issues on plaintiff's FEHA claim. Summary judgment on plaintiff's claim for wrongful termination is therefore not warranted.

### 5.     **Notice of CFRA Rights**

Plaintiff alleges that defendant violated CFRA by failing to provide plaintiff with notice that he was entitled to family leave. "The remedy . . . for a violation of section 7297.9 (failure to provide notice) shall be an order that the employer provide such notice." 2 Cal. Admin. Code § 7297.8. Defendant argues that, even assuming defendant failed to provide plaintiff with notice of his CFRA rights, the only remedy available for this violation is moot because defendant took family leave. The Court agrees. The record reflects that plaintiff signed two applications for family leave. Accordingly, defendant's motion for summary judgment on this claim is GRANTED.

7

### 6. Notice of COBRA Rights

Plaintiff alleges that defendant violated the Consolidated Omnibus Budget Reconciliation Act of 1986 ("COBRA") and California Labor Code § 2807 by failing to provide plaintiff with notice of his continuing medical benefits and coverage. Section 1166 of COBRA requires employers to notify the administrator of a group health plan of a "qualifying event" within 30 days of a qualifying event. 29 U.S.C. § 1166. "Qualifying event" is defined as, *inter alia*, "the termination . . . of the covered employee's employment." 29 U.S.C. § 1163. Courts have discretion to assess penalties against employers that fail to meet the notice requirements of COBRA. 29 U.S.C. § 1132(c). Section 2807 of the California Labor Code provides that employers must notify former employees as required by COBRA, as well as with notice of the availability of continued coverage for medical, surgical, or hospital benefits, and a standardized form from the California Department of Health Services. Cal. Lab. Code § 2807.

Here, defendant terminated plaintiff in March, 2007 and did not notify him of his COBRA rights until August 21, 2007. *See* Donnellan Decl., at ex. B, DID 410. Plaintiff could have elected to continue his coverage of his health care benefits until October 20, 2007. *See id.* According to plaintiff's wife, the family did not elect COBRA coverage because they could not afford the premium. *See id.*, Tr. 66-67.

Defendant concedes that the delay in providing plaintiff violated the statutory period, but argues that plaintiff suffered no actual harm. The Court agrees. Plaintiff cites no evidence establishing that plaintiff would have been able to afford, and would have elected to receive, COBRA coverage if notice had been timely. Accordingly, the Court GRANTS defendant summary judgment on this issue.

### 7. Failure to Engage in an Interactive Process

Plaintiff alleges that defendant violated the FEHA by failing to engage in an interactive process with plaintiff to accommodate his disability. Section 12940 provides, in relevant part, that it is unlawful for an employer "to engage in a timely, good faith, interactive process with the employee or applicant to determine effective reasonable accommodations, if any, in response to a request for reasonable accommodation by an employee or applicant with a known physical or mental disability or known

8

medical condition." *See* Cal. Lab. Code § 12940(n). The Court finds that there are disputed issues as to whether plaintiff's disability could reasonably have been accommodated, the degree to which defendant engaged in an interactive process with plaintiff, and whether such a process could have been fruitful.

### 8. Intentional Infliction of Emotional Distress

The elements of intentional infliction of emotional distress are: (1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct. *Cervantez v. J. C. Penney Co.*, 24 Cal. 3d 579, 593 (Cal. 1979) (citations omitted). "For [c]onduct to be outrageous [it] must be so extreme as to exceed all bounds of that usually tolerated in a civilized community." *Id.* (citations omitted).

Defendant argues that plaintiff has failed to put forth any evidence establishing that defendant acted in a manner sufficient to meet the high standard required by a showing of outrageousness. Plaintiff argues that the corporate deposition, which is now scheduled for January 8, 2009, will reveal that defendant's safety concerns were pretextual. It is possible that this evidence could create a triable issue as to whether defendant's conduct was outrageous. Accordingly, the Court will allow plaintiff to brief this issue by **January 15, 2009**. Defendant's reply, if any, must be filed by **January 22, 2009**. Defendant's motion for summary judgment on this issue is GRANTED without prejudice to reconsideration should plaintiff file an opposition to defendant's motion by the January 15 deadline.

### 9. Punitive Damages

In California, a corporation is liable for punitive damages only if an "officer, director, or managing agent of the corporation" had advance knowledge of, or acted with conscious disregard, an act of "oppression, fraud, or malice." *See* Cal. Civ. Code § 3294(b). "Malice" is defined as "conduct which is intended by the defendant to cause injury to the plaintiff or despicable conduct which is carried on by the defendant with a willful and conscious disregard of the rights or safety of others."

9

"Oppression" is defined as "despicable conduct that subjects a person to cruel and unjust hardship in conscious disregard of that person's rights." *See* Cal. Civ. Code § 3294(c). In addition, the actor must be an "officer, director, or managing agent of the corporation." *See* Cal. Civ. Code § 3294(b).

Again, plaintiff argues that his corporate deposition will reveal that the safety concerns cited by plaintiff were pretextual. It is possible that this evidence could create a triable issue as to whether defendant acted with oppression or malice. The Court notes that in order to survive summary judgment, plaintiff must also cite evidence establishing that the decision makers were defendant's officers, directors, or managing agents. The Court will allow plaintiff to brief these issue by **January 15, 2009.** Defendant's reply, if any, must be filed by **January 22, 2009**. Defendant's motion for summary judgment on this issue is GRANTED without prejudice to reconsideration should plaintiff file an opposition to defendant's motion by the January 15 deadline.

### 10.  Back Pay and Front Pay

Defendant argues that plaintiff has forfeited back pay from July 1, 2007 and any potential front pay. On June 26, 2007, outside counsel for defendant informed plaintiff by letter that defendant made an "unconditional offer" to return plaintiff to work:

> [Plaintiff] may return to the facility at which he worked in the position and with the wage rate he would have had if he had not been off of work. [Plaintiff] will also receive the standard Company benefit package. Should [plaintiff] have any work restrictions, please have [plaintiff] present such to the Company for evaluation. The parties can discuss how best to handle any such restrictions.

Decl. of Andrew Goldberg in Supp. of Def. Mot. for Summ. J., at ex. 1. Through his lawyer, plaintiff refused the offer. *Id.* ¶ 2. Under Title VII of the Civil Rights Act of 1964, the accrual of backpay liability is tolled if the defendant offers the claimant the job originally sought. *See Ford Motor Co. v. E.E.O.C.*, 458 U.S. 219, 228-29 (1982). Defendant cites no authority establishing that the rule from Title VII applies in the FEHA context. Accordingly, defendant's motion for summary judgment on this issue is DENIED.

### CONCLUSION

For the foregoing reasons and for good cause shown, the Court hereby GRANTS IN PART AND

DENIES IN PART defendant's motion for summary judgment. Plaintiff may file an opposition to defendant's motion as to the intentional infliction of emotional distress claim and punitive damages by **January 15, 2009.** Defendant's reply, if any, must be filed by **January 22, 2009**.

**IT IS SO ORDERED.**

Dated: 12/29/08

SUSAN ILLSTON
United States District Judge